UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PEDRO VALENTIN,

    Plaintiff,

  v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

No. 2:18-cv-02394 AC

**ORDER**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for summary judgment will be DENIED.  The matter will be reversed and remanded to the Commissioner for further proceedings.

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB on August 27, 2014.  Administrative Record ("AR") 18.[2]  The disability onset date was alleged to be October 30, 2011.  Id.  The application was disapproved

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] The AR is electronically filed at ECF Nos. 13-3 to 13-22 (AR 1 to AR 1167).

1

initially and on reconsideration. Id. On May 1, 2017, ALJ Michael Cabotaje presided over the hearing on plaintiff's challenge to the disapprovals. AR 41 – 90 (transcript), 91 (exhibits). Plaintiff, who appeared with his representative Richard Whitaker, was present at the hearing. AR 41. Bernard Preston, a Vocational Expert ("VE"), also testified at the hearing. Id.

On August 8, 2017, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 18-30 (decision), 31-35 (exhibit list). On June 29, 2018, after receiving Exhibit 14B, Request for review from Wade Askew, and Exhibit 18E, Letter from claimant's representative, as additional exhibits, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibit list).

Plaintiff filed this action on August 30, 2018. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 9. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion), 21 (Commissioner's summary judgment motion), 24 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born on in in March of 1961, and accordingly was, at age 54, defined as an individual closely approaching advanced age, on the date last insured.[3] AR 55. Plaintiff has at least a high school education, and can communicate in English. AR 99, 220. Plaintiff worked as an iron worker contractor from 1996-2011. AR 222.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

---

[3] See 20 C.F.R. § 404.1563(d) ("person closely approaching advanced age").

2

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

////

////

IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

>1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2015.
>
>2. [Step 1] The claimant did not engage in substantial gainful activity during the period of his alleged onset date of October 30, 2011 through his date last insured of December 31, 2015. (20 CFR 404.1571 *et seq.*).
>
>3. [Step 2] Through the date last insured, the claimant had the following severe impairments: degenerative disc disease; facet arthropathy; osteoarthritis (20 CFR 404.1520(c)).
>
>4. [Step 3] Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
>5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolding; can occasionally balance (But on the low end of occasional); can occasionally stoop, kneel, crouch, and crawl; can occasionally perform left overhead reaching. He cannot have exposure to unprotected heights or heavy moving machinery and requires a cane for ambulation 50 feet or more or for prolonged standing and walking.
>
>6. [Step 4] Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
>7. [Step 5] The claimant was born [in March of 1961] and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).
>
>8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
>9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 30, 2011, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

AR 20-30.

As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 30.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) finding plaintiff not disabled by incorrectly assessing his borderline age situation; (2) improperly weighing medical evidence; (3) attributing plaintiff's impairments to alcoholism; and (4) undermining plaintiff's credibility and dismissing his testimony with regard to pain and symptoms. ECF No. 14 at 13.

### A. The ALJ's Discretionary Assessment of Borderline Age is Effectively Non-Reviewable

Plaintiff was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured. AR 28. Had he been 55 years of age, he would have been considered an individual of advanced age. 20 C.F.R. § 404.1563(e). Age is significant to the disability determination, because once a claimant establishes that he suffers from a severe impairment that prevents him from performing past work, the burden shifts to the Commissioner to "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999). The Commissioner can meet this burden in one of two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines ['the grids'] at 20 C.F.R. pt. 404, subpt. P, app. 2." Id. at 1101 (emphasis omitted).

"The grids" are a series of metrics for the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461–62 (1983) (footnotes omitted). There are three age categories: younger person (under age 50), person closely approaching advanced age (age 50–54), and person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)–(e). There are situations in which an individual might be on the "borderline" between two age categories. A "borderline [age] situation" occurs when the claimant is "within a few days to a few months of reaching an older age category" and would be found "not disabled" if the category for the claimant's chronological age were used, but "disabled" if the older age category were applied. 20 C.F.R. § 404.1563(b). The regulation specifically states:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

Id.

The ALJ has discretion to determine the applicable age category in a borderline situation; judicial review is limited to the question whether the ALJ considered whether to use the older age category rather than applying the categories mechanically. Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1071, 1072 (9th Cir. 2010), cert. denied, 563 U.S. 975 (2011). The ALJ need not explain his reasoning, but satisfies his duty merely by considering the issue. Id. Where application of the older category has been considered, the ALJ's decision to use the younger category may not be disturbed. Id.

Relying on out-of-circuit authority, plaintiff argues that the ALJ here committed reversible error in deciding to use the younger age category. ECF No. 14 at 16. Plaintiff was only 67 days away from his 55th birthday on his date last insured, and he would have been considered disabled had the older age category been adopted. Plaintiff raised the issue at the hearing, and the ALJ ruled as follows:

7

> I find that the overall impact of the claimant's residual functional capacity combined with age, education and work experience does not support the use of the higher age category. The claimant has a long continuous work history, and his past relevant work ended for reasons other than the claimant's impairments. There is no indication the claimant could not have continued working at his past relevant work. The residual functional capacity limitations substantially erode the occupational base and were considered in selecting a lower exertional level rule (i.e., the light rule is being used as a framework due to the medium occupational base being significantly eroded); applying the Medical-Vocational Guidelines non-mechanically using an age category that the claimant has not yet reached, although was close to it, as of the date he was last insured would be an unwarranted windfall to the claimant. I also observe from the record that the standing/walking limitations that effectively limited claimant to light jobs (despite his medium exertional capacity) are more attributed to ETOH abuse, not age-related or impairment-related factors.

AR 29.

Plaintiff contends that these reasons for not adopting the older age category are inconsistent with the ALJ's findings elsewhere in the decision that (1) plaintiff could not have done past relevant work, and (2) that plaintiff's substance abuse was not material to the issue of disability. See AR 21 (alcohol use) 28, 72 (inability to perform past relevant work). Plaintiff also argues that the ALJ's reliance on plaintiff's alcohol use in this context is inconsistent with the Ninth Circuit's rule that alcohol abuse may not be used to discount impairments before the five-step inquiry is complete. See Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001) ("If, and only if, the ALJ found that [the claimant] was disabled under the five-step inquiry, should the ALJ have evaluated whether [the claimant] would still be disabled if he stopped using alcohol.").

The court shares plaintiff's concern about the soundness of the ALJ's reasoning on the borderline age issue, but that concern cannot support reversal when the alleged error has not been recognized as a potentially reversible error by the Ninth Circuit. By holding in Lockwood, supra, that the ALJ's reasons for declining to adopt a higher age category need be stated so long as the ALJ demonstrates that he has considered the matter, the Court of Appeals has effectively dictated that the factual or legal soundness of the reasons does not affect the validity of the disability determination. Here, the record makes clear that the ALJ considered the borderline age issue and did not apply the categories mechanically. Rather, he considered the record as a whole and

exercised discretion as to the appropriate age category. Lockwood requires nothing more, and the undersigned lacks authority to reverse on this basis.

Because the case will be remanded on other grounds, the ALJ may reconsider the matter.

B. The ALJ Improperly Weighed the Medical Opinion Testimony of PA Salceda

Plaintiff challenges the ALJ's decision to give little weight to the opinion of treating medical provider Irene Salceda. ECF No. 14 at 17-19.[4]

1. The Relevant Medical Opinion Evidence

The record contains, in relevant part,[5] medical opinion evidence from Physician's Assistant Irene Salceda, supervised by treating physician Dr. Hakeem Adeniyi; SSA consultant Dr. L. Colksy; SSA consultant/examining physician Dr. Rose Lewis; and treating physician Dr. Wasafi Jahangiri.

PA Salceda was plaintiff's primary care provider for approximately two years, from 2013 through 2015. On August 5, 2013, PA Salceda observed spasms and a decreased active range of motion, decreased neck rotation, and tenderness in the trapezius, and referred plaintiff for an X-ray of the cervical spine. AR 792-93. During a November 4, 2013 visit, PA Salceda recorded that plaintiff experienced neck pain and a lower extremity "tingling sensation" when walking for prolonged periods of time, and observed the limited range of motion in the cervical spine with mild pain. AR 786-87. In 2014, PA Salceda referred plaintiff to neurology for further evaluation due to dizziness, extremity weakness, and gait disturbance. AR 784, 855. In 2015, PA Salceda evaluated plaintiff multiple times for "chronic" tendonitis in his left shoulder and referred him to physical therapy for tendonitis as well as his impaired gait and mobility. AR 851, 873, 890, 1001. Later in 2015, she evaluated plaintiff because of an inability to complete tasks and "friends noticing his forgetfulness." AR 1001. PA Salceda stated that plaintiff experienced extremity

---

[4] Plaintiff also challenged the fact that great evidentiary weight given to a single consultative examiner, Dr. Rose Lewis. ECF No. 14 at 17. However, plaintiff provided no legal argument on this point, simply making a conclusory statement that it was incorrect for the ALJ to give great weight to Dr. Lewis when her opinion called for a much higher RFC than any other medical opinion. Id. at 19. Because there is no legal argument to evaluate, this point is not addressed.

[5] Because plaintiff only challenges the evaluation of medical opinions with respect to plaintiff's physical limitations, opinions relevant to his mental limitations are not discussed here.

weakness, gait disturbance, memory impairment, and neck pain, and diagnosed osteoarthritis of the cervical spine. AR 1002-1003.

PA Salceda completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)." AR 893. She reported that plaintiff's impairments affected his ability to lift and carry, and that "per patient" he could lift 5-10 pounds occasionally and no weight frequently, stating that the medical findings that supported her assessment were "neck pain/knee pain/shoulder." Id. She found that plaintiff's impairments affected standing and walking, determining that he could only stand or walk 1.5 hours without interruption and only 1.5 hours total in an 8-hour work day. Id. PA Salceda determined that based on an X-ray of plaintiff's neck, he could only sit 1.5 hours per 8-hour day. AR 894. She stated that plaintiff could only occasionally climb, kneel, crouch, stoop, bend at waist, and crawl, and that his impairments affected his reaching, handling, and pushing/pulling because such activities "provoke neck pain." Id. PA Salceda also found plaintiff was restricted from "moving machinery" due to limited neck range of motion and pain. AR 895. She noted that medical records supported the symptoms and limitations described in the questionnaire as early as 2013. AR 896. Dr. Hakeem Adeniyi observed and oversaw all of PA Salceda's evaluations and treatment of Mr. Valentin and in December 2015, signed a statement supporting PA Salceda's findings and concurring with her assessment. AR 898.

On May 5, 2016, Dr. Jahangiri became plaintiff's primary care physician. ECF No. 1152. Dr. Jahangiri observed multiple problems, including memory concerns and neck pain, noting that plaintiff had a pain management appointment the following month. Id. Dr. Jahangiri reviewed plaintiff's MRI results and addressed his concern of neck and left arm tingling pain, explaining that this type of pain would be chronic. AR 1154. Dr. Jahangiri filled out a "Medical Assessment of Ability to do Work-Related Activities (Physical)" for plaintiff in March of 2017, after his DLI (12/31/2015). However, in the assessment, Dr. Jahangiri stated that the earliest date the medical records support the symptoms and limitations described in her responses was "8/5/2013 per our records" (AR 1165), referring to an August 2013 visit in which PA Salceda described that plaintiff's decreased range of motion and referred him for an MRI. AR 793. In the assessment,

Dr. Jahangiri found that plaintiff could lift "less than 10 pounds on an occasional basis" due to medical findings of "pain in neck pain, left shoulder most of the time." AR 1162. Dr. Jahangiri found that plaintiff's hourly capability to stand and walk "may vary" due to a "history of dizziness, falls. Worse on prolonged standing." Id. Dr. Jahangiri found that plaintiff could only occasionally climb, kneel, crouch, stoop, bend at waist, and craw, and that his impairments impacted reaching, feeling, handling, and pushing/pulling. AR 1163. Dr. Jahangiri opined that Mr. Valentin had "significant limitation performing repetitive reaching, handling or fingering." AR 1164. Dr. Jahangiri also observed plaintiff's experience of pain to be "sufficiently severe enough to interfere with the attention and concentration needed to per[form] even simple work tasks frequently" due to "cervical spine disc herniation causing nerve impingement pain radiates to arms, shoulders." Id. Dr. Jahangiri concluded that plaintiff would likely be absent from work as a result of his impairments "four days or more per month" due to "ongoing pain interfering with daily life activities." AR 1165.

SSA Consultant Dr. L. Colsky produced a Disability Determination in June of 2015. AR 119. Dr. Colsky opined that plaintiff would be limited to "very short & simple tasks" and had moderate limitations in his ability to "perform at a consistent pace without an unreasonable number and length of rest periods." Id. Dr. Colsky concluded that Mr. Valentin had non-transferable skills, and was limited to a light RFC. AR 120-121.

Finally, plaintiff saw independent consultative examiner Dr. Rose Lewis in February of 2015. AR 858-863. Dr. Lewis noted that plaintiff was able to ambulate without an assistive device and was able to get on and off the examination table without difficulty. AR 861. Dr. Lewis reported no abnormalities in the neck examination, and that plaintiff could do tandem toe-heal walking without difficulty but on tandem walking he was somewhat unsteady. Id. Dr. Lewis diagnosed a history of alcohol abuse and minor left shoulder strain. AR 862. Dr. Lewis concluded plaintiff could stand and walk up to six hours, sit without limitation, and lift and carry up to 50 pounds occasionally and 25 pounds frequently. AR 863.

////

////

2. <u>Principles Governing the ALJ's Consideration of Medical Opinion Evidence</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

"The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. <u>Regennitter v. Comm'r of Soc. Sec. Admin.</u>, 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

3. <u>The ALJ Erred in Discounting PA Salceda's Opinion</u>

The ALJ erred in discounting the opinion of PA Salceda, as approved by Dr. Adeniyi. The ALJ gave "little weight" to the opinion, providing two rationales: (1) "the opinion does not provide support with any explanation of the extreme limitations and the restrictions are not consistent with the record as a whole, including the objective findings . . ."; and (2) "[t]he lifting limitations, as well as other limitations, are based on the claimant's self-reports" which are "inconsistent with other reports by the claimant." AR 26. First, the ALJ erred in failing to specify the inconsistencies that he believed existed between PA Salceda's opinions and the medical record. An ALJ may reject a treating physician's opinion only by providing clear and

convincing or specific and legitimate reasons supported by substantial evidence by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors, are correct." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (internal citations and quotation marks omitted).

Here, the ALJ did not satisfy this requirement. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison, 759 F.3d at 1012-1013. Although the ALJ did provide a general summary of the treatment record earlier in the decision (AR 25-26), he did not specify how that record or any particular parts of it conflict with PA Salceda's assessment. Indeed, the ALJ referenced only the opinion assessment and ignored PA Salceda's treatment record in his description of the medical opinion and evidence. AR 25-26. Further, while the ALJ cites conflict with the "objective evidence," pointing to the earlier reference to a 2013 X-ray and a 2015 MRI, the ALJ does nothing to explain how either of these tests are inconsistent with PA Salceda's opinion, which is particularly problematic because PA Salceda actually relies on the X-ray as support for her opinion.

Second, the ALJ erred in discounting PA Salceda's opinion because it was based on the claimant's self-reports. "If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014). In this case the ALJ does not explain why he believed that "other [non-lifting] limitations"[6] in the opinion were based on self-reports, as opposed to the two years of treatment history or the 2013 X-ray

---

[6] The lifting limitations are expressly based on self-reports, recorded as "per patient." AR 893.

that PA Salceda actually cited. AR 894. The ALJ's treatment of this medical opinion constitutes error.

### C. The ALJ Did Not Improperly Attribute Plaintiff's Impairments to Alcoholism

Plaintiff asserts that the ALJ erred in finding that plaintiff's alcohol use was not a severe impairment, and then subsequently discounting many of plaintiff's medically determinable impairments as due to alcoholism. ECF No. 14 at 19. Plaintiff fails to identify any impairment that the ALJ specifically discounted based on alcoholism, with a single exception: discounting plaintiff's standing/walking limitations in the decision to use the younger age category, as discussed above. AR 29. This is harmless error at most, because the decision regarding age categories is effectively unreviewable for the reasons previously explained. It does not appear that the ALJ applied this reasoning elsewhere in his decision. Plaintiff's only other specific argument is that the ALJ improperly stated that a 2011 hospital stay was for alcoholism, but this does not show that the ALJ actually discounted any impairment based on alcoholism. ECF No. 14 at 20-21. Upon review of the decision, the undersigned does not find that the ALJ improperly discounted any of plaintiff's impairments specifically as attributable to alcoholism.

### D. The ALJ Improperly Discounted Plaintiff's Subjective Testimony

The ALJ erred in discounting plaintiff's subjective testimony. The ALJ discounted plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms on grounds that they were "not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." AR 24. The ALJ went on to note that plaintiff reported a "wide range of activities" inconsistent with total disability or limitations greater than those assigned in the RFC. Id. The ALJ referenced two specific issues: (1) that "in April 2016, the claimant reported he had been moving all of his furniture and boxes into the garage" (AR 24, 1055), and (2) that he was able "to work after the alleged onset date delivering auto parts, which involved walking, driving, lifting and carrying." AR 24.

The Ninth Circuit requires that an ALJ give "clear and convincing reasons" for the decision to discredit a claimant's allegations. Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Chaudhry v. Astrue, 688 F.3d 661, 670-71 (9th Cir. 2012). The ALJ's rationale here is neither clear

nor convincing. First, the Commissioner does not explain why it is proper for the ALJ to cherry-pick a single instance of moving boxes to prove that plaintiff can work, particularly where the record the ALJ cites is a doctor's note reflecting that plaintiff reported "increasing pain in his low back radiating into his buttocks" from the activity while acknowledging that he had a history of bad knees and feet and was not supposed to be engaging in such an activity. AR 1055. The reference to plaintiff's work at Napa Auto Parts is similarly unconvincing: the decision itself reflects that plaintiff worked there for three months, but he was terminated from employment due to his frequently calling in sick because of difficulty walking. AR 20. A plaintiff's activities of daily living can affect his credibility only if the ALJ finds that those activities are transferable to a work setting, and there is no indication that plaintiff regularly engages in the activities referenced or that having participated in them transfers to his ability to engage in full-time work. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) ("[t]he ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination"). The ALJ did not provide clear and convincing reasons for discounting plaintiff's testimony.

### E. Remand for Further Proceedings

The ALJ erred with respect to evaluating the medical opinion of PA Salceda and with respect to evaluating plaintiff's subjective testimony. An error is harmful when it has some consequence on the ultimate non-disability determination. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's error in this matter was harmful; plaintiff's RFC may be impacted by the proper evaluation of PA Salceda's opinion and plaintiff's subjective testimony. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Here, further factual development is needed to determine if and to what extent plaintiff's subjective testimony should be credited, how the medical opinion discussed above should be properly addressed, and what the impact of these changes would be on the determination of

disability.  For these reasons, the matter is reversed and remanded to the Commissioner for further factual development.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is DENIED;

3. This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: January 7, 2020

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE